Filed 7/26/22  In re K.B. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re K.B., a Person Coming Under the Juvenile Court Law. | C094822 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>P.O.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 20DP00204) |

P.O., mother (mother) of the minor K.B. (K.B. or minor) appeals from the juvenile court's order to continue reunification services following a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e)).[1]  She contends there was not

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

substantial evidence to support a finding that reasonable services had been provided by the Butte County Department of Employment and Social Services, Children's Services Division (Department) during the six-month review period, with the exception of a period of two months. She further contends that even if the juvenile court's determination was correct, the court did not correctly calculate the amount of time mother should have for the following review period. We shall affirm the order.

BACKGROUND

A. *Initial Dependency Proceedings*

Minor was born in 2006 during the marriage of mother and father, J.B. (father). The parents divorced when minor was approximately seven years old. Father was granted sole legal and physical custody over minor in family law court based on allegations that mother physically and emotionally abused minor. The family law court also ordered a restraining order against mother, protecting the minor and father. It is in effect until February 2025 but allows for visitation between mother and the minor.

On August 26, 2020, the Department received a referral concerning the minor's allegations of emotional and sexual abuse perpetrated by father. A second referral followed when the minor was placed on a psychiatric hold.

The minor reported to the responding social worker that she used to live with mother until the year prior when her mother physically abused her, so she went to live with father. The minor declined to discuss the nature of the physical abuse. Mother told the social worker that the minor claimed that she picked minor up by the hair and threw her out of the house, but mother claimed she grabbed the minor's wrist and made her go outside.

On September 4, 2020, the Department filed a petition pursuant to section 300, subdivisions (c) and (g) alleging that the minor disclosed that father physically, sexually, and emotionally abused her and mother previously physically abused her; the minor has mental health diagnoses, often runs away from home, does not consistently engage in

2

mental health treatment, and refuses to return to father's care; and mother is unable to care for the minor because there is an active restraining order preventing her from having the minor in her care. On September 8, 2020, the juvenile court held the detention hearing and ordered the minor detained from both parents.

B. *Jurisdiction and Disposition*

On October 7, 2020, mother and father submitted on an amended petition, and the juvenile court sustained the petition.

On November 2, 2020, the Department filed the disposition report recommending that the minor be removed from her parents' care, declared a dependent, and that reunification services be offered to mother and father. According to the report, the minor suffered from significant mental health issues and risk of self-harm, as well as sexual exploitation. The disposition report outlined several objectives for mother, including complying with court orders, maintaining appropriate visitation, and participating in counseling and education services. According to the case plan, "[a]fter the successful completion of the eight group sessions [of parent engagement counseling], the parent will participate in a Resource Meeting, at which time a recommendation may be made for the client to participate in other services such as nurturing parenting, intensive group counseling, or treatment focused counseling." Additionally, the case plan stated that "[p]arents who do not successfully complete Parent Engagement Counseling may be required to repeat the service."

On November 19, 2020, the juvenile court held the dispositional hearing, removed the minor from parents' custody, and ordered the case plan recommended by the Department. The court also ordered the Department to look into services that could be provided to mother in Redding where she resides.

C. *Six-month Review Hearing*

On May 4, 2021, the Department filed a status review report recommending that reunification services continue to be offered to the parents and that the minor be placed in

3

out-of-home care. According to the report, mother had been referred several times to virtual parent education classes but did not engage in these services, reporting that she preferred to "engage in services that were more helpful and locally available." The report indicated that the minor had "a few in-person visits with her mother through Children Hope Foster Family agency as well as infrequent phone calls." At a child and family team (CFT) meeting on January 29, 2021, the minor expressed that she did not think visits with mother would be beneficial to her at the time. The social worker indicated that she cannot force the minor to attend visits with mother. The minor's clinician said that a visit with a counselor would not work well and recommended against visits.

Mother was not invited to a CFT meeting on March 5, 2021, because the social worker indicated that the minor still did not want visits with mother. The Department social worker asked the foster family agency social worker if they could facilitate counseling between mother and the minor. The agency social worker indicated they could not, but she could help locate an agency to facilitate such counseling. The Department social worker said that "they aren't there yet anyway." Mother was invited to a virtual CFT meeting on April 21, 2021, the day before the meeting; she agreed to attend but did not do so.

Mother had a few in-person visits and phone calls with the minor during the review period. The minor refused to speak with mother after an argument with her on March 24, 2021. The Department recommended that the minor remain in her placement and that the parents continue to receive family reunification services.

At the contested six-month review hearing on August 3, 2021, social worker Shameka Harrison testified that she was assigned to the family's case in early April. She testified that prior to her assignment to the case, a virtual parenting class, parent engagement counseling, was offered to mother. This program was only available online at that time. Harrison testified that mother did not participate in parent engagement counseling. Harrison also testified that she provided mother with alternative in-person

4

counseling services closer to her residence in July 2021. Harrison testified that she did not provide any services to mother from April until the referral in July because she "was still getting familiar with the case and [she] wasn't sure what the family needed, and [she knew that mother] had been offered services previously [but] she had declined those services." Harrison testified that mother had not had any visits with the minor since she was assigned to the case in April 2021 because the minor declined to have in-person, virtual, or telephonic contact with her mother. She explained that the minor was in counseling to help address the barriers in her relationship with mother, but her counselor would not facilitate contact between the two of them. Harrison explained that she continued to encourage the minor to consider visiting with her mother but that she refuses any contact because she "indicated that her mother was emotionally and physically abusive to her."

Mother testified that she was not aware that she could participate in parent engagement counseling virtually. She also indicated that she "did try to do a conference call with a bunch of parents, [but] . . . felt it was not productive." She explained that she "got part of the way through the program" but did not complete it. Mother also claimed that she had not seen or spoken with the minor since approximately December 2020.

After testimony concluded, counsel for mother argued that the Department failed to provide reasonable services for four months from April through July 2021. Counsel for the Department initially argued that the juvenile court should find that reasonable services were provided to mother. Later in the hearing, counsel conceded: "I'm concerned by the lack of contact following the review. The problem is that the status review report was filed with this court on May 5th. So, you know, I think what happened was that we didn't follow-up after the status review report was filed. So I think for May, June, and July to have a finding that we should provide additional services to the mother or an attempt to provide additional services to the mother would not be inappropriate."

5

The juvenile court followed the Department's recommendation to continue reunification services for the parents, and the court found that mother was not provided with reasonable services for a two-month period in May and June of that year. The court advised that mother should be encouraged to cooperate with the Department and that she should bring any perceived issues with services to the court's attention. The court expressed concern about mother's refusal to participate in the parent education classes because she felt that they did not apply to her. The court advised that any perceived issues regarding reunification services should be timely addressed with the court, and "not just a unilateral decision made by a parent that it doesn't apply to them." The court scheduled the 12-month review for November 17, 2021, which the court advised included additional time in light of the finding of unreasonable services for a two-month period.

Mother filed a timely notice of appeal.

DISCUSSION

I

*Reasonable Services Finding*

Mother contends the juvenile court's finding that the Department provided her with reasonable reunification services except for the months of May and June 2021 is not supported by substantial evidence. She contends she was not provided reasonable services during the entirety of the six-month reporting period, specifically citing lack of services in the Redding area, where she resides, and lack of visitation. We disagree.

A parent is entitled to family reunification services, unless the juvenile court finds by clear and convincing evidence that providing such services would not be appropriate under a number of exceptions, none of which the court found to apply in this case. (See § 361.5, subds. (a)(1), (b), & (e).) "To promote reunification, visitation must be as frequent as possible, consistent with the well-being of the child." (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

When the juvenile court orders reunification services, the child welfare agency must tailor those services to the needs of the family and design them to alleviate the circumstances that gave rise to the child becoming a dependent of the court. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) The child welfare agency "must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 (*Amanda H.*); see *In re K.C.* (2012) 212 Cal.App.4th 323, 329-330.) The agency must attempt to provide reasonable reunification services even if it is difficult to do so or the prospects of reunification are low at the time the court orders the services. (*In re Taylor J.,* at p. 1451; see *In re Alvin R.* (2003) 108 Cal.App.4th 962, 973 ["*Some* effort must be made to overcome obstacles to the provision of reunification services."].) The agency's efforts to provide reunification services do not have to be perfect, but they must be reasonable given the circumstances of the case. (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.)

We review the trial court's reasonable services findings for substantial evidence. (*Amanda H., supra*, 166 Cal.App.4th at p. 1346; *In re T.G., supra*, 188 Cal.App.4th at p. 697.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) "We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*Id.* at p. 545.)

Here, the juvenile court found that mother was not provided with reasonable services for a period of two months, May and June 2021, and ordered her 12-month review period extended by two months. Otherwise, the court found mother was provided reasonable services. According to mother's case plan, "[a]fter the successful completion of the eight group sessions [of parent engagement counseling], the parent will participate in a Resource Meeting, at which time a recommendation may be made for the client to participate in other services such as nurturing parenting, intensive group counseling, or treatment focused counseling." Additionally, the case plan stated that "[p]arents who do not successfully complete Parent Engagement Counseling may be required to repeat the service." Despite the parent engagement counseling services being the required first step in the case plan, mother failed to successfully complete this service, which was *only* offered on a virtual basis during that time period. At the hearing, mother testified that she was not aware that she could participate in parent engagement counseling virtually. Notwithstanding her claims, mother acknowledged that she had participated in a virtual program on one occasion but felt it was not productive. Mother further explained that she started but did not complete the program.

Mother argues that the Department should have identified her "desire for local services as an obstacle, located services in Redding or at least Shasta County, and referred her to them without delay." In support of her argument, mother contends that the Department was ordered to look into what additional services could be provided in the Redding area. But she does not explain why the virtual parent engagement counseling program was inadequate, other than the fact that she felt she could not relate to the other parents in the program. The juvenile court expressed concern about mother's refusal to participate in the virtual parent education classes and her overall tone and attitude during the hearing. The court advised that any issues regarding reunification services should be timely raised with the court, and "not just a unilateral decision made by a parent that it doesn't apply to them." As a result of these services being available to mother on a

8

virtual basis and only available virtually during the relevant time period, the juvenile court properly determined that the parent education classes were reasonably provided to mother.

Mother further contends that the Department "did not provide reasonable services to facilitate visitation between mother and minor because it made minimal efforts to resolve the lack of visits between mother and minor." She cites the fact that mother did not have any visits with minor following an argument with minor on March 24, 2021. Mother had a few in-person visits and phone calls with the minor during the review period prior to the March argument.

The Department responded to the minor's refusal to visit with mother by scheduling CFT meetings, with and without mother. At the CFT meeting on January 29, 2021, the minor expressed that she did not think visits with mother would be beneficial to her at the time. The minor's clinician recommended against visits. Mother was invited to a virtual CFT meeting on April 21, 2021, the day before the meeting. Despite the late notice, mother agreed to attend but did not do so. Harrison testified that the minor was in counseling to help address the barriers in her relationship with mother, but her counselor would not facilitate contact between the two of them. Harrison also testified that she continued to encourage the minor to consider visiting with her mother but that the minor refused any contact because "her mother was emotionally and physically abusive to her."

Despite the juvenile court's finding of inadequate services during two months of the review period, the reason in-person visits ceased during the last few months leading up to the six-month review hearing was primarily the result of the minor's refusal to visit in person after an argument with mother. While mother indicated in her testimony that "she had not been able to visit or speak to minor since approximately December 2020" and pointed to this claim as a fact in her briefing, that claim is not supported by the record. As we have discussed, mother attended at least one CFT meeting with the minor on January 29, 2021, and mother argued with the minor during a conversation between

9

them on March 24, 2021. Further, mother did not request any enforcement of, or changes to, the visitation order. She asserts that the minor's refusal to visit was due to parental alienation and contends that the minor should have specifically participated in a parental alienation program, but she did not raise this request in the juvenile court or with the Department.

"When a child refuses visitation, it is the parent's burden to request a specific type of enforcement, or a specific change to the visitation order. Absent a request, it is not the court's burden to sua sponte come up with a solution to the intractable problem of a child's steadfast refusal to visit a parent. . . . Those sorts of changes are better handled, in the first instance, through communication with [the child welfare agency], and, as needed, through motions to modify the visitation order." (*In re Sofia M.* (2018) 24 Cal.App.5th 1038, 1046.) *Sofia M.* placed the onus on the parent to bring the child's refusals to the court's attention, at which point the court must make "reasonable efforts" to secure visitation. (*Id.* at pp. 1046-1047.) We agree with *Sofia M.*'s approach. Here, mother did not request a parent alienation program nor any other specific type of enforcement or modification to the visitation order. Accordingly, we conclude the Department made a good faith effort to develop and implement the reunification plan and assist mother and the minor with visitation during the remaining four months of the review period. (See *Amanda H., supra*, 166 Cal.App.4th at p. 1345.)

II

*12-month Review Hearing Date*

Mother contends that "[e]ven if the juvenile court's determination was correct that mother did not receive reasonable services for a period of two months during the initial review period, the court did not correctly calculate the amount of time mother should have for the following review period." She asserts that the court miscalculated the hearing date as November 17, 2021, when the date should have been set for December 7, 2021. The Department contends that mother's claim that the date of the 12-month review

10

hearing was miscalculated is now moot because the hearing was subsequently continued to December 1, 2021. We agree. Because we cannot provide any effective relief if we found reversible error, the issue is rendered moot. (*In re N.S.* (2016) 245 Cal. App.4th 53, 60.)

## DISPOSITION

The juvenile court's order is affirmed.

/s/
HOCH, J.

We concur:

/s/
HULL, Acting P. J.

/s/
EARL, J.

11